# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO MENDOZA JUAREZ, | Case No.  1:25-cv-00075-SAB |
| Plaintiff, | ORDER AFFIRMING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY |
| v. | (ECF Nos. 15, 16) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff Armando Mendoza Juarez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying in part his applications for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument.

Plaintiff requests the decision of Commissioner be reversed and the case be remanded for further proceedings, arguing that the decision below was not supported by substantial evidence. Specifically, Plaintiff argues that the Administrative Law Judge ("ALJ") erred in her analysis of a certain medical opinion, as well as inadequately considering an impending age category change.

For the reasons explained herein, the Court will affirm the decision of the Commissioner.

/ / /

/ / /

/ / /

1

## I.

## BACKGROUND

### A.    Procedural History

On December 14, 2021, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income. (ECF No. 12, Administrative Record ("AR"), 22.)  In both applications, Plaintiff alleged disability beginning on May 1, 2017.  (Id.)  Plaintiff's applications were initially denied on April 28, 2022, and denied upon reconsideration on October 11, 2022.  (Id.)  Plaintiff requested a hearing before an ALJ.  On April 26, 2024, Plaintiff, represented by counsel, appeared for a hearing in front of an ALJ. (Id.)  Plaintiff and vocation expert ("VE") GleeAnn L. Kehr testified. (Id.)  On May 17, 2024, the ALJ issued a decision concluding that Plaintiff was disabled from January 31, 2024, through the date of the decision, but Plaintiff had not been under disability at any time through December 31, 2023, the date last insured.  (AR 33-34.)  On December 4, 2024, the Appeals Council denied Plaintiff's request for review.  (AR 1-5.)

### B.    The ALJ's Findings of Fact and Conclusions of Law

In the decision, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act only through December 31, 2023, and that Plaintiff had not engaged in substantial gainful activity since September 1, 2019—the amended alleged onset date.  (AR 24.) The ALJ found that Plaintiff had the following severe impairments since the amended alleged onset date of September 1, 2019: chronic gouty arthritis, diabetes mellitus type II, diabetic peripheral neuropathy, peripheral circulatory disorder due to diabetes mellitus, lumbar (L4-L5) facet arthropathy with anterolisthesis, and alcoholic cirrhosis of the liver with ascites.  (AR 25.) However, since September 1, 2019, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed in impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 26.)

After considering the entire record, the ALJ found that Plaintiff had the residual functional capacity ("RFC"), since September 1, 2019, to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he could lift and carry 20 pounds occasionally and ten pounds

frequently, sit six hours, and stand and/or walk 4 hours.  He could never climb ladders, ropes, or scaffolds.  He could occasionally climb ramps and stairs, stoop, crouch, kneel, crawl, and balance on narrow, slippery, or erratically moving surfaces.  He could occasionally push or pull, including operate foot controls, with the bilateral lower extremities.  He could have no exposure to hazards, including unprotected heights and exposed moving mechanical parts.  He could have no exposure to humidity, wetness, and extreme cold.  (AR 27-28.)

The ALJ then found that, since September 1, 2019, that Plaintiff was unable to perform any past relevant work, and he had at least a high school education.  (AR 32.)

The ALJ then found that prior to the established disability onset date, Plaintiff was an individual closely approaching advanced age.  (Id.)  On January 31, 2024, Plaintiff's age category changed to an individual of advanced age.  (Id.)  Therefore, the ALJ found that prior to January 31, 2024, transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that Plaintiff was "not disabled" whether or not the claimant has transferable job skills.  (Id.)  The ALJ also found that beginning on January 31, 2024, Plaintiff had not been able to transfer job skills to other occupations.  (Id.)

In light of the foregoing, the ALJ found that prior to January 31, 2024, the date Plaintiff's age category changed, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed.  (AR 33.)  However, beginning on January 31, 2024, the date Plaintiff's age category changed, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were no jobs that exist in significant numbers in the national economy that Plaintiff could perform.  (Id.)

Accordingly, the ALJ made two conclusions.  First, Plaintiff was not disabled prior to January 31, 2024, but became disabled on that date and has continued to be disabled through the date of this decision.  (Id.)  Second, Plaintiff was not under a disability within the meaning of the Social Security Act at any time through December 31, 2023, the date last insured.  (Id.)

Plaintiff sought timely review of the Commissioner's decision in the federal courts.  (ECF

No. 1.)  The parties consented to the jurisdiction of the United States Magistrate Judge.  (ECF Nos. 4, 10, 11.)  Thereafter, the parties filed their briefs on the matter.[1]  (ECF Nos. 15, 16.)

## II.

## LEGAL STANDARD

### A.   The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to be used in determining whether a claimant is disabled.  20 C.F.R. § 404.1520;[2]  Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.

Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

Step four: Does the claimant possess the residual functional capacity ("RFC") to

---

[1] On December 1, 2022, the Supplemental Rules for Social Security became effective.  Rule 5 states, "[t]he action is presented for decision by the parties' briefs."  Fed. R. Civ. P. Appx. Rule 5.  The 2022 Advisory Committee noted that "Rule 5 states the procedure for presenting for decision on the merits a [42 U.S.C.] § 405(g) review action that is governed by the Supplemental Rules."  Fed. R. Civ. P. Appx. Rule 5 advisory committee note 2022.  Like an appeal, "the briefs present the action for decision on the merits.  This procedure displaces summary judgment or such devices as a joint statement of facts as the means of review on the administrative record."  Id.  The 2022 Advisory Committee unambiguously clarified that "Rule 5 also displaces local rules or practices that are inconsistent with the simplified procedure established by these Supplemental Rules for treating the action as one for review on the administrative record."  Id.  Here, Plaintiff filed a motion for summary judgment, which the Court will construe as a brief in support of his position on whether the Court should affirm, modify, or reverse the decision of the Commissioner.  42 U.S.C. § 405(g).

[2] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits.  Accordingly, while Plaintiff seeks only Social Security benefits under Title II in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).[3]  "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001); 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To do this, the ALJ can use either the Medical Vocational Guidelines ("grids") or rely upon the testimony of a VE.  See 20 C.F.R. § 404 Subpart P, Appendix 2; Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  "Throughout the five-step evaluation, the ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'"  Ford, 950 F.3d at 1149, quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

---

[3] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

## B. Standard of Review

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to affirm, modify, or reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Further, the Court's review of the Commissioner's decision is a limited one; the Court may not disturb the Commissioner's final decision unless it is based on legal error or the findings of fact are not supported by substantial evidence. 42 U.S.C. § 405(g); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "[T]he threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 587 U.S. 97, 103 (2019). Rather, "[s]ubstantial evidence is more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Stiffler v. O'Malley, 102 F.4th 1102, 1106 (9th Cir. 2024), quoting Ford, 950 F.3d at 1154. In other words, "[s]ubstantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995).

Should the ALJ err, the Court will not reverse where the error was harmless. Stout, 454 F.3d at 1055-56. "An error is harmless only if it is 'inconsequential to the ultimate nondisability determination.'" Leach v. Kijakazi, 70 F.4th 1251, 1255 (9th Cir. 2023), quoting Lambert v. Saul, 980 F.3d 1266, 1278 (9th Cir. 2020). The burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012), quoting Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012), quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Nor may the Court affirm the ALJ on a ground upon which he or she did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). It is

6

not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154, quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## III.

## DISCUSSION AND ANALYSIS

Plaintiff argues that the ALJ erred in two ways. First, Plaintiff argues that the ALJ failed to properly analyze the medical opinion of Xin Lao, M.D. (and treatment notes of George Boghozian, D.C.). (ECF No. 15, pp. 9-15.) Second, Plaintiff contends that the ALJ employed a "mechanical application" of the age categories in this case. (Id. at pp. 15-17.) The Commissioner opposes, arguing the ALJ's opinion is supported by substantial evidence. (ECF No. 16.) The Court agrees with the Commissioner.

### A.    Analysis of Medical Opinions

When an ALJ calculates a claimant's RFC, the ALJ is tasked with determining "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing** basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." SSR 96-8p, 1996 WL 374184, at *2 (emphasis in original). In other words, the "RFC does not represent the least an individual can do despite his or her limitations or restrictions, but the *most*." Id. (emphasis in original). An ALJ assesses an RFC "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). This includes "any statements . . . provided by medical sources, whether or not they are based on formal medical examinations," as well as reviewing any "consultative examination(s)" and, where applicable, prior administrative medical findings ("PAMFs"). Id.

Under the Social Security Administration's 2017 revised regulations, "there is not an inherent persuasiveness to evidence from [government consultants] over [a claimant's] own medical source(s), and vice versa." Woods v. Kijakazi, 32 F.4th 785, 791 (9th Cir. 2022), quoting Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844, 2017 WL 168819 (F.R. Jan. 18, 2017). "The most important factors" that the agency considers when

evaluating the persuasiveness of medical opinions are "supportability" and "consistency." Id., quoting 20 C.F.R. § 404.1520c(a). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 416.920c(c)(1). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2). With that said, it remains for "the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020), quoting Treichler, 775 F.3d at 1098.

"The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion." Woods, 32 F.4th at 792, citing 20 C.F.R. § 404.1520c(c)(3). Therefore, "an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records." Id., citing 20 C.F.R. § 404.1520c(c)(3)(i)-(v). That said, "the ALJ no longer needs to make specific findings regarding these relationship factors." Id.

### 1. Xin Lao, M.D.

The ALJ summarized and analyzed the medical opinion of Xin, Lao, M.D., as follows:

> On November 10, 2023, Xin Lao, M.D., opined that in an 8-hour workday, he could sit less than 2 hours, stand/walk less than 2 hours, he needs a job that permits shifting positions at will, must walk every 30 minutes for 5 minutes, he would need to elevate his legs 30 degrees for 50 percent of an 8-hour day, he could grasp, turn, perform manipulation, reach in front, and reach overhead 60 percent in an 8-hour day, and he would be off task 20 percent (Ex. 11F). I find this portion of the opinion unpersuasive. Although Dr. Lao was the claimant's primary care physician for a long time (according to the claimant's testimony), specifically for his diabetes, these limitations are not supported by Dr. Lao's treatment notes. For example, Dr. Lao's physical exams were unremarkable (Ex. 4F/284; 7F/110-112). He also opined that the claimant needs unscheduled breaks once an hour for 30 minutes (Ex. 11F). I find this unpersuasive because it is not supported by Dr. Lao's treatment notes and is inconsistent with his physical therapy treatment notes. For example, his physical therapy notes showed

he was within functional limits for lumbar flexion, extension, and bilateral side bending, and he could lift 15 pounds from floor to waist with some discomfort as of November 10, 2023 (Ex. 19F/3). Dr. Lao also opined that the claimant could lift/carry 10 pounds occasionally and 20 pounds rarely.  I find this portion of the opinion unpersuasive because "rarely" is not defined by Social Security regulations and is not consistent with the other opinions. Dr. Lao opined that the claimant could occasionally twist, stoop, crouch, squat, climb stairs, and climb ladders (Ex. 11F).  This portion of the opinion is supported by the claimant's complaints regarding his lower back and gouty arthritis.  In addition, it is consistent with the record evidence.  For example, he had generalized discomfort in the mid lumbar spine area and radiated into the buttocks bilaterally.  He was able to bend over to within eight inches of touching the floor with his long fingers.  He was able to squat about halfway and took a squat. (Ex. 10F).  Dr. Lao opined that the claimant was capable of low stress work (Ex. 11F). I find this unpersuasive because the claimant's mental impairments are non-severe as discussed above and do not support a "low stress" limitation.  Furthermore, Dr. Lao did not specify what he meant by the term "low stress," with is not defined in our regulations.  Lastly, he opined that the claimant would be absent four days per month.  I find this portion of the opinion unpersuasive because Dr. Lao did not mention this limitation in his treatment notes and the providers also did not recommend this limitation. It is also inconsistent with the other opinions in the file.

(AR 31.)

As should be apparent, the ALJ methodically went through Dr. Lao's opinion, limitation by limitation, first giving a finding of persuasion followed by detailed analysis of both supportability and consistency.  For example, the ALJ identified that he found the first set of limitations opined by Dr. Lao as unpersuasive because they were not supported by Dr. Lao's treatment notes and physical exams of Plaintiff.  Another example is that the ALJ found as persuasive that portion of Dr. Lao's opinion regarding occasional twisting, stooping, crouching, squatting, climbing stairs and ladders.  The ALJ found that the opinion was both supported by Plaintiff's own testimony as consistent with other medical records.  The rest of the opinion speaks for itself, and the Court finds that the ALJ more than adequately discussed supportability and consistency.

Plaintiff nonetheless makes an argument that is ill-suited to the area of Social Security regarding the evaluation of medical opinions.  Specifically, Plaintiff argues that the ALJ ignored other evidence (citing to cases where the purported error was a failure to translate medical opinions to RFCs).  (ECF No. 15, pp. 12-13.)  In support of this argument, Plaintiff cites to the treatment

notes of George Boghozian, D.C. (discussed below).

However, the Court reiterates its previous finding that the ALJ did not err in her analysis of evaluation of the medical opinion of Dr. Lao, the claim Plaintiff ostensibly brings.

Because Plaintiff's conflates these two areas of Social Security, the Court will address the records from Dr. Boghozian.

### 2. George Boghozian, D.C.

Under the regulations, a "medical opinion" is defined as

> a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities:
>
> (i)   Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (ii)  Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (iv)  Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513; see 20 C.F.R. § 416.913.

Plaintiff has directed the Court to two treatment notes completed by Dr. Boghozian. (AR 645, 608.) Neither of these records opine on what Plaintiff could still do despite his impairments. Though the ALJ is required to *review* all evidence relevant to a claim, 20 C.F.R. §§ 404.1520b, 416.920b, the ALJ is not required to *discuss* all the objective medical evidence in a record (in contrast to being generally required to assess each medical opinion).

Plaintiff does not address this point. Rather, it appears that Plaintiff would have the Court engage in a reevaluation of the RFC in light of the findings by Dr. Boghozian, which is not permitted on judicial review.

Therefore, Plaintiff's argument with regard to Dr. Boghozian is not persuasive.  Plaintiff does not otherwise articulate how the RFC is deficient.

In sum, the ALJ did not err in her assessment of the medical opinion of Dr. Lao (or by not discussing the treatment notes by Dr. Boghozian).

**B.      Application of the Age Categories**

"Social security regulations divide claimants into three age categories: younger persons (those persons under age 50), persons closely approaching advanced age (those persons age 50–54), and persons of advanced age (those persons age 55 or older).  Lockwood v. Commissioner of Social Sec. Admin., 616 F.3d 1068, 1069 (9th Cir. 2010), citing 20 C.F.R. § 404.1563(c)-(e). "Where a claimant is within a few days or a few months of reaching an older age category (a 'borderline situation'), an ALJ has discretion, but is not required, to use the older age category." Id., citing 20 C.F.R. § 404.1563(b).  In other words, "[a]lthough an ALJ is required by regulation to *consider* whether to use an older age category in a borderline situation, there is no requirement that the ALJ explain in her written decision why she did not use an older age category." Id. at 1070 (emphasis in original), citing 20 C.F.R. § 404.1563(b).

The Court finds that the ALJ's opinion clearly demonstrated that the ALJ was aware and considered Plaintiff's age category.  This is demonstrated by the fact that the ALJ first acknowledged that prior to the established disability onset date, Plaintiff was an individual approaching advanced age and that on January 31, 2024, Plaintiff's age category changed to advanced age.  (AR 32, citing 20 C.F.R.§§ 404.1563, 416.963); see Lockwood, 616 F.3d at 1072. Following, the ALJ found, using VE testimony, that prior to January 31, 2024, there were jobs of significant numbers that Plaintiff could perform in the national economy, and beginning January 31, 2024, Plaintiff was disabled.  (AR 32-33.)  This establishes that the ALJ was aware and evaluated the overall impact of all the factors in Plaintiff's case with particular attention to Plaintiff's age.  See Lockwood, 606 F.3d 1072.

Plaintiff's suggestion that the ALJ was required to make explicit findings regarding this is belied by his own case law.  See id.  In addition, Plaintiff's citation to district court opinions purportedly creating a test in this area of Social Security is unpersuasive.  In any event, Lockwood

did not signal an intent to create a bright-line test.  The Ninth Circuit merely discussed whether, in case before it, the ALJ's opinion demonstrated that the ALJ had *considered* whether to use the older age category after evaluating the overall impact of all the factors of the case.  As in Lockwood, the Court is satisfied that the ALJ did so here.

The ALJ did not err.

## IV.

## CONCLUSION AND ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that the decision of the Commissioner of Social Security is AFFIRMED.  It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Armando Mendoza Juarez.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **March 2, 2026**                              _____
                                                        STANLEY A. BOONE
                                                        United States Magistrate Judge